# UNITED STATE DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| U.S. Bank National Association, in its capacity as Indenture Trustee and not in its Individual Capacity,<br><br>Plaintiff,<br><br>vs.<br><br>Alliant Energy Resources, Inc., a Wisconsin corporation; and Alliant Energy Corp., a Wisconsin corporation,<br><br>Defendants. | Case No.:<br><br><br><br>**COMPLAINT** |

For its complaint, Plaintiff states and alleges:

### The Parties

1.      Plaintiff, U.S. Bank National Association ("Plaintiff" or "Trustee"), is a national banking association formed under the laws of the United States.  Plaintiff is deemed a citizen of the state of  Ohio pursuant to 28 U.S.C. § 1348.

2.      Defendant, Alliant Energy Resources, Inc. ("Resources") is a Wisconsin corporation with its principal place of business in the state of Wisconsin.

3.      Defendant Alliant Energy Corp. ("Alliant") is a Wisconsin corporation with its principal place of business in the state of Wisconsin.

**Jurisdiction and Venue**

4.      The Court has jurisdiction over this action pursuant to the provisions of 28 U.S.C. §§ 1332(a)(1) because Plaintiff and Defendants are citizens of different states and the sum in controversy exceeds the sum or value of $75,000.

5.      Venue in the District of Minnesota is proper under 28 U.S.C. § 1391.

**FACTS**

**The Business of the Parties**

6.      Among Plaintiff's business activities, it serves for a fee as an indenture trustee for securities which are subject to the provisions of the Trust Indenture Act, 15 U.S.C. §77aaa through 77bbbb.  In the course of that business, Plaintiff serves as Trustee pursuant to that certain indenture dated as of November 4, 1999 (as amended and supplemented by the Second Supplemental Indenture dated February 1, 2000, the "Indenture"), by and among Resources, as issuer, Alliant, as guarantor, and Plaintiff as Trustee.  Trustee administers the Indenture and provides services pursuant thereto at the headquarters of its corporate trust business in St. Paul, Ramsey County, Minnesota.

7.      Resources is a wholly-owned direct subsidiary of Alliant.  Resources currently manages a small portfolio of wholly-owned subsidiaries consisting of non-regulated electricity generation businesses and other non-regulated investments. Resources' once diversified portfolio of international and other non-regulated assets has shrunk to two simple-cycle, natural gas-fired power plants in Wisconsin and other modest investments, including, environmental consulting, engineering and renewable energy

services, construction management services for windfarms located throughout the country, including in Minnesota, and transportation.

8.      Alliant owns a number of subsidiaries in addition to Resources. Alliant's primary, first-tier subsidiaries include:  Interstate Power & Light Co. ("IP&L"), an Iowa corporation, which engages in the generation, purchase, distribution and sale of electricity and natural gas in Iowa, Minnesota and Illinois; Wisconsin Power and Light Company ("WP&L"), a Wisconsin Corporation, which engages in the generation, purchase, distribution and sale of electricity and natural gas in Wisconsin and Illinois; and Corporate Services, a Wisconsin Corporation, which provides administrative services to Alliant and its subsidiaries.

## Nature of Action

9.      This action is brought pursuant to the provisions of the Declaratory Judgment Act, 28 U.S.C. §2201, and pursuant to the provisions of Minnesota Statutes § 501B.16(4) for a declaratory judgment and an interpretation of a trust, declaring that Defendant Resources is in breach of a contract with U.S. Bank National Association as successor indenture trustee under the Indenture.  There is an actual case or controversy between Plaintiff and Defendants.

10.    Pursuant to the Indenture, Resources through the issuance of Notes (defined below), borrowed $402.5 million from investors based on the terms and conditions set forth in the Indenture.  Among these terms and conditions is a so-called "Successor Obligor" clause requiring that, if Resources elects to transfer all or substantially all of Resources' properties and assets to a third party, then the transferee must be organized

and existing under the laws of the United States, and the transferee must assume Resources' obligations under the Notes and the Indenture.  In breach of this clause, Resources has transferred all or substantially all of its properties and assets to entities outside the United States, and did so without any assumption of the Notes or Indenture.

11.     Resources is a wholly-owned subsidiary of Alliant, the Guarantor of the Notes.  When the Notes were issued, Resources was a fast-growing, internationally focused, non-regulated business distinct from the operations of its parent and other regulated subsidiaries.  In 2003, however, Alliant embarked on a comprehensive plan to dispose of substantially all of Resources' properties and assets, ultimately resulting in sales of more than $1.2 billion in assets (according to Alliant's public disclosures), including all of Resources' international investments, generally to entities that are not organized in the United States.  By the end of 2006, Resources had sold its interest in its last international power plant, Alliant Energy New Zealand, in excess of $300 million (according to Alliant's public disclosures), leaving it with only two domestic simple-cycle natural gas power plants (one of which Resources intends to sell in June 2009 for approximately $95 million), an investment in Mexico (which has since been sold) and some minor "other non-regulated investments."  In other words, Resources had relatively de minimis assets left.

12.     This series of asset sales, and particularly the sale of Resources' New Zealand interests at the end of 2006, dramatically depleted Resources' assets, radically changed the focus of its business activities and increased the long term risk profile for the holders of the Notes.  When Resources borrowed $402.5 million from the public,

Resources held a diversified portfolio of internationally focused, fast-growing, non-regulated assets. Following its asset dumping exercise, Resources is now a small, marginally-profitable domestic business largely dependent on supplying services in Wisconsin to its parent and other regulated subsidiaries. This series of transactions – fundamentally altering the nature of Resources' business and effecting a transfer of well over two-thirds of its assets – constitutes a transfer of all or substantially all of Resources' assets in violation of the Indenture's Successor Obligor clause.

13.    In a letter dated August 14, 2008, Plaintiff, as indenture trustee under the Indenture, asked Resources to set forth its position as to whether a default under the Successor Obligor clause (as defined herein) exists. Resources' response denies any breach. On September 4, 2008, the Trustee, sent a Notice of Default alleging that Resources has breached the Successor Obligor clause.

14.    Alliant and Resources deny that Resources disposed of all or substantially all of its assets and deny that there has been a default under the Indenture. In consequence, a dispute now exists between Plaintiffs and Defendants regarding whether Resources is in default under the Indenture, giving rise to a justiciable controversy. Plaintiff, in its capacity as Trustee, brings this action to resolve that dispute.

**The Indenture**

15.    In November 1999, Resources issued and investors acquired $402.5 million of exchangeable senior notes due 2030 (the "Notes"). The Notes were issued pursuant to the Indenture.

16.     The Indenture is governed by Wisconsin law.   (Indenture, at § 10.09).
Section 5.01 of the Indenture (the "Successor Obligor" clause) expressly prohibits
Resources from conveying, transferring or leasing "all or substantially all" of its property
to another entity unless the transferee entity is organized under the laws of the United
States and assumes Resources' obligations the Notes.   Section 5.01 provides in pertinent
part:

> [I]n case [Resources] shall consolidate or merge into another person or
> convey, transfer or lease **all or substantially all** of its properties and assets
> to any person, the entity formed by such consolidation or into which
> [Resources] is merged or the person which acquires by conveyance or
> transfer, or which leases, all or *substantially all of the properties* of
> [Resources] **shall be a person organized and existing under the laws of
> the United States of America**, any state thereof or the District of Columbia
> and **shall expressly assume, by an indenture** (or indentures, if at such time
> there is more than one Trustee) supplemental hereto, executed by the
> successor person and the Guarantor and delivered to the Trustee, in form
> reasonably satisfactory to the Trustee, the due punctual payment of the
> principal of, any premium and interest on all the Securities and the
> performance of every obligation in this Indenture and the Securities on the
> part of [Resources] to be performed or observed.   (Indenture, at §
> 5.01)(emphasis added)

Section 1.04 of the Indenture defines all words used in the Indenture in the singular to
include the plural, and vice versa; accordingly, the word "person" in Section 5.01 is to be
construed to include the plural.

17.     The Successor Obligor clause is intended to, among other things, protect
Noteholders from the disposition of all or nearly all of Resources' assets unless the
purchasers are U.S. entities that assume all obligations of Resources under the Notes and
the Indenture.   Resources is not permitted to sell its assets piecemeal to foreign buyers.

18.     An Event of Default is deemed to have occurred under Article 6 of the Indenture if:

> [Resources] or the Guarantor materially defaults in the performance or ***materially breaches any of their respective covenants or obligations*** under this Indenture… and such ***material default or breach continues for a period of 90 days after which [Resources] or the Guarantor receives written notice from the Trustee*** [(the "Grace Period**")]**…" (Indenture, at § 2.16) (emphasis added)

19.     Upon an Event of Default, the Trustee "may declare the principal . . .  of all the Securities of that Series to be due and payable."  Indenture, at § 6.02.

20.     Alliant guaranteed Resources' obligations under the Indenture:

> In case of failure of [Resources] punctually to pay any such principal, sinking fund payment, if any, premium, if any, or interest, the ***Guarantor hereby agrees to cause any such payment to be made*** punctually when and as the same shall become due and payable, whether at maturity, upon redemption or otherwise, and as if such payment were made by [Resources].  (Indenture, at § 2.16)(emphasis added).

### Divestiture of Substantially All of Resources' Assets

21.     Not long ago, Resources, directly or indirectly, held a variety of foreign energy generation and distribution companies, including, among others, projects and power plants in Australia, Brazil, China and New Zealand.  These international assets represented valuable independent fast-growing businesses that were not correlated to Alliant's regulated operations, and ownership thereof diversified Resources' portfolio and reduced its dependence on domestic assets.

22.     From time-to-time during the period 1999 through 2002, Resources announced its intention to grow its non-regulated and international business:

- **1999** - Alliant … expects to pursue various potential business development opportunities, including international as well as domestic investments, and is devoting resources to such efforts.  Alliant, Annual Report (Form 10K), at 42 (Dec. 31, 1999).

- **2000** - "Resources (through its numerous direct and indirect subsidiaries) has established global partnerships to develop energy generation, delivery and infrastructure in growing international markets."  Alliant, Annual Report (Form 10K), at 58 (Dec. 31, 2000).

- **2001** – "Alliant's … strategic plan includes . . . growing the non-regulated side of its business through partnerships and acquisitions in generation projects, oil and gas investments, international markets and other strategic initiatives." Alliant, Annual Report (Form 10K), at 24 (Dec. 31, 2001).

- **2002** – "Resources intends to focus on its International and Non-regulated Generation businesses as its primary long-term strategic platforms and will continue reviewing for ways to narrow its strategic focus and business platforms."  Alliant, Annual Report (Form 10K), at 21 (Dec. 31, 2002).

23.     Beginning in 2003, however, Alliant initiated a plan to systematically dispose of both Resources' domestic and international non-regulated assets.  Alliant's intention to dramatically alter Resources' business became clear when it announced that its "domestic utility business [would be] its core business and the sole growth platform within [Resources'] updated strategic plan."  Alliant, Annual Report (Form 10K), at 26 (Dec. 31, 2003).  The most significant of these divestitures, according to Alliant's public disclosures, include:

- Sale of Resources' investment in Southern Hydro, an Australian company that owns and operates electricity generation facilities in the Australian state of Victoria, to Meridian Energy Limited, New Zealand's largest electricity generator, for approximately **$365 million** in April of 2003.

- Sale of stock of Whiting Petroleum Corporation, a holding company for Whiting Oil and Gas Corporation and Equity Oil Company, through initial public offering, for total proceeds of approximately **$277 million** in 2003 and 2004.

- Sale of Resources' non-controlling interest in five Brazilian electricity utilities to Brazil-based Sobrapar Ltda for **$152 million** in January of 2006.

- Sale of Resources' investments in China (ten combined heat and power facilities) to, Banpu Plc, among others, for approximately **$146 million** in 2006.

24.    Most significantly, on December 29, 2006, Resources completed its virtually total exit from its international business by selling its interest in Alliant Energy New Zealand Ltd. ("AENZ"), an indirectly wholly owned subsidiary of Resources, which holds interests in two publicly traded New Zealand utilities, to Infratil Limited, a New Zealand-based infrastructure investment company, for at least **$300 million**.    These investments had paid significant cash dividends to Resources, thereby representing Resources' most liquid and valuable investment.

25.    Furthermore, upon information and belief, at the time of the sale, AENZ, constituted in excess of two-thirds of Resources' remaining assets.    Therefore, the sale of AENZ, in and of itself, constituted a sale of substantially all of Resources' assets at the time of the sale.

26.    In June 2007, Resources completed a sale of its investment in the Laguna del Mar Resort in Mexico to Salvago Mexico for approximately **$75 million**.

27.    The various above-referenced sales produced in the aggregate gross proceeds of more than **$1.2 billion**.    No supplemental indentures were executed in connection with any of these asset sales, nor on information and belief has any purchaser assumed any of Resources' obligations for the Notes.

28.     Resources' remaining assets consist primarily of two simple-cycle, natural gas-fired electricity generating facilities located in Wisconsin and other minor "non-regulated investments," the recorded value (net of project debt) of which (according to public filings) is approximately **$216 million**.  This book value likely overstates the actual market value of the remaining assets because, in 2006, most simple-cycle power plants sold for well-below their book value.  Further, subject to regulatory approval, Resources plans to sell one of these plants to its affiliate WP&L for approximately **$95 million**, effective June 1, 2009.

29.     The divestiture of substantially all of Resources' international investments and non-regulated assets described above fundamentally transformed Resources' business.  Resources no longer holds a diversified portfolio of international utility and other investments; instead, it now merely holds investments in small, marginally-profitable domestic businesses that are closely aligned with the publicly regulated utility business of its parent.

30.     Alliant executives have described Resources' "non-regulated business platform steadily evolving into a **relatively small portfolio** of lower risk, mature businesses with **much closer strategic tries** to [Alliant's] regulated utility business." (Alliant Energy Earnings Call, August 3, 2006.)  They also asserted their desire to "narrow [their] strategic focus and concentrate on those opportunities now available to [them] in [their] domestic utility operations."  (Alliant Energy Earnings Call, July 27, 2004.)

31.     Resources' systematic divestiture of all or substantially all of its assets, and its of AENZ viewed by itself, are each plain violations of the Successor Obligor clause.

## CAUSE OF ACTION
### Count One

32.     Plaintiff realleges all and singular paragraphs 1 through 30 hereinabove.

33.     The Indenture is a valid and enforceable contract to which Resources, Alliant, and Plaintiff are parties.

34.     The Successor Obligor clause of the Indenture requires that a transferee of substantially all of Resources' assets (i) be an entity organized in the United States and (ii) assume Resources' obligations under the Notes and the Indenture.

35.     Resources' transfer of substantially all of its assets in the transactions described in paragraphs 23, 24, and 25 hereinabove to companies that (i) are not organized in the United States, and (ii) did not assume Resources' obligations under the Notes and the Indenture, is a breach of the Indenture.

36.     Plaintiff has duly given Alliant and Resources Notice of Default pursuant to and in accordance with the terms of the Indenture.  Resources has a 90 day Grace Period in which to cure the default before the Notes may be accelerated**.**

37.     Defendants deny that Resources disposed of all or substantially all of its assets or that a default has occurred.

38.     After expiration of the Grace Period, an Event of Default under Section 6 of the Indenture will have occurred, and the Trustee may declare the principal of all the Notes to be due and payable.

39.     By virtue of the foregoing, an actual controversy exists between the Plaintiff and Resources and Alliant.

40.     Plaintiff is entitled to a judgment declaring that Resources is in breach of the Successor Obligor Clause contained in Section 5.01 of the Indenture by reason of its transfer of substantially all of its assets to entities that are not legally organized in the United States and that did not assume Resources' liabilities under the Notes and the Indenture, that a default has occurred and that the Notice of Default was properly issued by Plaintiff, and, therefore, upon the expiration of the Grace Period, an Event of Default will have occurred and that the Plaintiff thereupon has the right to declare the principal amount of the Notes, and any accrued and unpaid interest, immediately due and owing, and that Alliant is liable upon its Guaranty.

### Count Two

41.     Plaintiff realleges all and singular paragraphs 1 through 30 hereinabove.

42.     The Indenture is a valid and enforceable contract to which Resources, Alliant, and Plaintiff are parties.

43.     The Successor Obligor clause of the Indenture requires that a transferee of substantially all of Resources' assets (i) be an entity organized in the United States and (ii) assume Resources' obligations under the Notes and the Indenture.

44.     Resources' transfer of substantially all of its assets in the transaction described in paragraph 24 hereinabove to a company that (i) is not organized in the United States, and (ii) did not assume Resources' obligations under the Notes and the Indenture, is a breach of the Indenture.

45.     Plaintiff has duly given Alliant and Resources Notice of Default pursuant to and in accordance with the terms of the Indenture.  Resources has a 90 day Grace Period in which to cure the default before the Notes may be accelerated**.**

46.     Defendants deny that Resources disposed of all or substantially all of its assets or that a default has occurred.

47.     After expiration of the Grace Period, an Event of Default under Section 6 of the Indenture will have occurred, and the Trustee may declare the principal of all the Notes to be due and payable.

48.     By virtue of the foregoing, an actual controversy exists between the Plaintiff and Resources and Alliant.

49.     Plaintiff is entitled to a judgment declaring that Resources is in breach of the Successor Obligor Clause contained in Section 5.01 of the Indenture by reason of its transfer of substantially all of its assets to entities that are not legally organized in the United States and that did not assume Resources' liabilities under the Notes and the Indenture, that a default has occurred and that the Notice of Default was properly issued by Plaintiff, and, therefore, upon the expiration of the Grace Period, an Event of Default will have occurred and that the Plaintiff thereupon has the right to declare the principal amount of the Notes, and any accrued and unpaid interest, immediately due and owing, and that Alliant is liable upon its Guaranty.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment in its favor and against Defendants, and each of them, jointly and severally, as follows:

A.      Declaring that Resources has sold or transferred all or substantially all of its assets under a systematic plan of liquidation beginning in 2003 and ending in 2006.

B.      Alternatively, declaring that Resources has sold or transferred all or substantially all of its assets  when it sold AENZ;

C.      Declaring that Resources breached Section 5.01 of the Indenture, the Successor Obligor clause;

D.      Declaring that a default has occurred under the Indenture;

E.      If the default is not cured within the 90 day Grace Period, declaring that an Event of Default has occurred under the Indenture;

F.      If the default is not cured within the 90 day Grace Period, declaring that Plaintiff has the right to declare the principal amount of the Notes and any accrued and unpaid interest immediately due and owing;

G.      Declaring that Alliant is liable upon its Guaranty;

H.      Awarding Plaintiff all of its costs, disbursements and attorneys' fees herein;

I.      Awarding Plaintiff such other, further, or different relief as the Court may deem just and equitable.

Dated: September 4, 2008          **MASLON EDELMAN BORMAN & BRAND LLP**


By:    <u>s/William Z. Pentelovitch       </u>
       William Z. Pentelovitch (#85078)
       Emily M. Rome (#296648)
       Haley N. Schaffer (#0313099)
Maslon Edelman Borman & Brand LLP
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone:   612.672.8200
Facsimile:   612-672-8397
E-mail:     bill.pentelovitch@maslon.com

**ATTORNEYS FOR PLAINTIFF**
**U.S. BANK NATIONAL ASSOCIATION**

**OF COUNSEL:**

**PAUL WEISS RIFKIND WHARTON & GARRISON, LLP**
Gerard E. Harper
Andrew N. Rosenberg
Samantha G. Amdursky
1285 Avenue of the America
New York, NY 10019-6064
Telephone:   212-373-3000
Facsimile:   212-757-3990

608599

15